**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **Rockstim Consulting, LLC,** *Plaintiff* | § § | |
| **v.** | § § | **No. 1:25-CV-01844-RP** |
| **Workrise Technologies, LLC, et al.,** *Defendants* | § § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant SM Energy Company and Nathan Moore's Amended Motion to Dismiss Pursuant to FRCP 12(b)(6), filed January 30, 2026 (Dkt. 31); Plaintiff's Response to Defendants' SM Energy Company and Nathan Moore's Amended Motion to Dismiss, filed February 13, 2026 (Dkt. 34); and SM Energy Company and Nathan Moore's Reply in Support of Their Amended Motion to Dismiss, filed February 20, 2026 (Dkt. 58).[1]

## I. Background

Plaintiff Rockstim Consulting, LLC, a Texas-based oil and gas engineering consulting and staffing company, brings this breach of contract and tort action against Defendants SM Energy Company; Workrise Technologies, LLC; Rusco Operating, LLC; SDS Petroleum Consultants, LLC; Precision Petroleum Solutions, LLC; SM employee Nathan Moore; Workrise employee James David Rappattnoi; and SDS employee Geno Hill.

[1] By Text Order issued April 28, 2026, the Honorable Robert Pitman referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

**A. Rockstim's Allegations**

Rockstim offers skilled engineering consulting and quality control services to clients in the oil and gas industry in Texas. First Amended Complaint, Dkt. 26 ¶ 14. SM is an oil and gas exploration company that operates in Texas. *Id.* ¶ 15. SDS, Workrise, and PPS also are skilled engineering and consulting firms that operate in Texas and are competitors of Rockstim. *Id.* Rusco appears to be an affiliate of Workrise. *Id.* ¶ 3.

On December 23, 2016, Rockstim entered into a Master Work Agreement with SM in which Rockstim agreed to provide "services to SM through Plaintiff's employees and contractors" to perform oil and gas work for SM in Texas in exchange for monthly payments. *Id.* ¶ 14. The Terms of Payment provision required SM to pay properly submitted invoices for work performed within thirty days of receipt provided all work was performed, "SM Energy has been furnished all data that may have been requested by it relating to the Work," and all conditions precedent have been fulfilled. Dkt. 31-1 at 4.

Rockstim and SM worked amicably together for several years. But in August 2023, SM began to conspire with Rockstim's competitors Workrise and SDS by putting Rappattoni and Hill "in charge of approving their competitor-Plaintiff's invoices" and directed Rockstim to hand over its scheduling duties to them. Dkt. 26 ¶¶ 16-17. Rockstim alleges that immediately after Workrise and SDS were placed in charge of approving invoices, "SM stopped timely paying Plaintiff's invoices, in breach of the Master Work Agreement and SM protocols." *Id.* ¶ 16. Rockstim also alleges that "vesting authority over scheduling and invoicing with Rockstim's competitors" violated the Master Work Agreement. *Id.*

Rockstim also alleges that SM conspired with its competitors to poach all Rockstim's employees and contractors, causing "a complete collapse of Plaintiff's business," that Defendants

misappropriated its proprietary information. *Id.* ¶¶ 28, 35. SM stopped using Rockstim as a consulting firm in December 2023. *Id.* ¶ 23.

**B. Litigation**

In its First Amended Complaint, Rockstim asserts the following claims: (1) federal and Texas state antitrust violations against SDS, Workrise, Hill, and Rappatttoni; (2) federal and state misappropriation of trade secrets claims against all Defendants; (3) breach of contract against only SM; (4) tortious interference with contractual relations against all Defendants; (5) tortious interference with prospective business relationships against all Defendants; (6) fraud; (7) negligence/negligent misrepresentation against all Defendants; (8) money had and received against SDS, Workrise, and PPS; (9) civil conspiracy; and (10) vicarious liability. Rockstim invokes the Court's federal question jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337(a) (commerce and antitrust actions), and 18 U.S.C. § 1836(c) (misappropriation of trade secrets). Rockstim asserts that the Court has supplemental jurisdiction over its state claims under 28 U.S.C. § 1367(a) because they are related to the federal claims.

SM and Moore move to dismiss under Rule 12(b)(6), arguing that Rockstim fails to state any plausible claim for relief against them.

## II. Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up).

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court also may consider those documents. *Id.*

### III. Defend Trade Secrets Act Claim

Rockstim asserts that SM (and all other) Defendants misappropriated its trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. The DTSA provides that an "owner of a trade secret that is misappropriated may bring a civil action" in federal court "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b). To state a plausible claim under DTSA, the plaintiff must allege: (1) the existence of a trade secret; (2) that the trade secret was misappropriated; (3) that the misappropriated trade secret was used without authorization; and (4) "that the trade secret related to a 'product or service used in, or intended for use in, interstate or foreign commerce.'" *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 711 (W.D. Tex. 2025) (quoting 18 U.S.C.

§ 1836(b)(1)). A plaintiff also must show that it took "reasonable measures" to keep the information secret. *Id*.

Rockstim alleges that it compiled a proprietary electronic workbook ("Proprietary Workbook") for each job it worked on that

> contained hundreds, if not thousands, of calculations that allow the user to properly perform quality control, monitor jobs, and obtain a holistic picture of treatments (fracturing treatments, fracking, pumping high pressure and high rate water, sand and chemical combinations into a well) in order to determine the best approaches going forward.

Dkt. 26 ¶ 35. Rockstim alleges that it kept the proprietary information confidential and did not share it with competitors or customers, including SM. *Id.* ¶ 45. Rockstim alleges: "After Defendants conspired to destroy Rockstim and misappropriate its staff, Defendants used the Proprietary Workbook to continue the projects that had been previously performed by Rockstim and its staff." *Id.* ¶ 46. Specific to SM, Rockstim alleges that "SM, under the direction of Regina Choate, ordered Felix Cantu, formerly of Rockstim, to misappropriate the Proprietary Workbook on the job after leaving Rockstim. Mr. Cantu subsequently went to work for SDS, performing the same work for SM that he had previously performed through Rockstim." *Id.* Rockstim also alleges that all Defendants "have misappropriated Rockstim's trade secrets by engaging in unauthorized use of its trade secrets to provide Defendants with an unfair advantage and to improperly compete with Rockstim." *Id.* ¶ 47.

Rockstim does not allege that Moore had any involvement in the alleged misappropriation of trade secrets. Thus, fails to state a plausible claim for relief under the DTSA against Moore. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Rockstim's claim against SM also fails it does not sufficient plead the element of interstate commerce. Again, an owner of a trade secret that is misappropriated may bring a DTSA suit "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA "is limited to activity that is actually in, as opposed to activity that merely affects, interstate commerce." *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 597 (E.D. Tex. 2021), *aff'd*, 2023 WL 316138 (5th Cir. Jan. 19, 2023). Accordingly, to state a claim under the DTSA, a plaintiff must allege that its purported trade secrets relate to a product or service within the flow of interstate commerce. *Id.*

> [T]he DTSA does not require that the alleged trade secrets themselves be used in interstate commerce. Rather, the DTSA requires that the trade secrets *relate to a product or service that is used in interstate commerce*. It is the underlying product or service—not the trade secret—that must be used in or intended for use in interstate commerce in order to assert a claim under the DTSA.

*Id.*

But Rockstim does not allege that its trade secrets relate to a product or service that was used in interstate commerce; it does not allege that it ever provided its consulting or engineering services to customers outside of Texas. Instead, Rockstim alleges that it performed all jobs and services in this case in Texas and used its proprietary information on jobs in Texas. Dkt. 26 ¶¶ 14, 35-36. Rockstim also alleges that Defendants misappropriated its trade secrets on jobs in Texas and used those trade secrets "to seamlessly continue the exact same work that Rockstim had been undertaking." *Id.* ¶ 46. It does not allege that Defendants ever used its trade secrets on services provided outside of Texas.

Based on these allegations and the failure to plead that the trade secrets were used in a product or service in interstate commerce, Rockstim does not plead the interstate commerce element of its DTSA claim. *El Paso Disposal*, 766 F. Supp. 3d at 716 (dismissing DTSA claim where plaintiffs

failed to plead any allegations indicating that their waste collection services were used by customers outside of Texas). Rockstim has not pled a plausible claim for misappropriation of trade secrets under the DTSA, and this Magistrate Judge recommends that Judge Pitman grant the motion to dismiss as to this claim.

## IV. State Claims

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is to be presumed that a case lies outside this limited jurisdiction, and the burden of establishing the contrary rests on the party asserting jurisdiction. *Id.* Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). "Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." *SXSW*, 83 F.4th at 407 (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)).

Rockstim asserts that this Court has supplemental jurisdiction over its state law claims under 28 U.S.C. § 1367(a).[2] Dkt. 26 ¶ 11. Section 1367(a) provides that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

[2] Rockstim does not assert that diversity of citizenship jurisdiction exists under 28 U.S.C. § 1332. This Court lacks diversity jurisdiction over the parties because complete diversity of citizenship between the parties is lacking. *See* Dkt. 1 ¶¶ 1-9 (stating that plaintiff and all but one defendant are Texas citizens). "To properly allege diversity jurisdiction under § 1332, the parties need to allege complete diversity. That means all persons on one side of the controversy must be citizens of different states than all persons on the other side." *SXSW*, 83 F.4th at 407 (citation and quotations omitted).

28 U.S.C. § 1367(a). But the district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Courts also are instructed to consider the "common law factors of judicial economy, convenience, fairness, and comity." *Brookshire Bros. Holding v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed. *Heggemeier v. Caldwell Cnty., Texas*, 826 F.3d 861, 872 (5th Cir. 2016). The general rule is that "a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Id.* (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Thus, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*

Because Rockstim does not state a plausible claim for relief as to its only federal claim, this Magistrate Judge recommends that Judge Pitman follow the general rule and decline to exercise supplemental jurisdiction over Rockstim's state law claims under 28 U.S.C. § 1367(c). *Heggemeier*, 826 F.3d at 872-73 (affirming dismissal of pendant state-law claims under § 1367(c)(3) when federal claim had been dismissed).

This Magistrate Judge also recommends that Judge Pitman decline to exercise jurisdiction over SM and Moore because the nine Texas state law claims Rockstim asserts against them predominate over the one federal claim. "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726.

The Court also finds that judicial economy and fairness favor declining to exercise supplemental jurisdiction over the state law claims. The parties will not be unduly prejudiced because this case is in its early stages and the jury trial is not set to commence until January 2028. And the statute of limitations on the state law claims remain tolled while the case is pending in federal court and for 30 days following dismissal. 28 U.S.C. § 1367(d). The parties can use the same briefing on the state law claims in state court.

For all these reasons, this Magistrate Judge recommends that the Honorable Robert Pitman decline to exercise jurisdiction over Rockstim's state law claims.

## V. Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court:

- **GRANT IN PART** SM Energy Company and Nathan Moore's Amended Motion to Dismiss (Dkt. 31) and **DISMISS** Plaintiff's misappropriation of trade secret claim under the Defend Trade Secrets Act against SM Energy Company and Nathan Moore with prejudice under Rule 12(b)(6);

- **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state law claims against SM Energy Company and Nathan Moore and **DISMISS** Plaintiff's state law claims against SM Energy Company and Nathan Moore without prejudice under 28 U.S.C. § 1367(c); and

- **DISMISS** Defendants SM Energy Company and Nathan Moore.

Because Defendants Workrise, RUSCO, SDS, PPS, Rappattoni, and Hill did not move to dismiss Plaintiff's First Amended Complaint, Rockstim's claims against those defendants remain pending if Judge Pitman accepts this recommendation.

The Court **ORDERS** that this case be removed from this Magistrate Judge's docket and returned to the docket of the Honorable Robert Pitman.

## VI. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 27, 2026.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE