IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROCKSTIM CONSULTING, LLC, *Plaintiff,* | § | |
| v. | § | 1:25-CV-1844-RP |
| WORKRISE TECHNOLOGIES, LLC, et al., *Defendants.* | § | |

**ORDER**

Before the Court is the Report and Recommendation of the United States Magistrate Judge, (Dkt. 52), concerning Defendants SM Energy Company and Nathan Moore's Motion to Dismiss. (Dkt. 31). Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that the Report and Recommendation should be **ADOPTED IN PART AND REJECTED IN PART**.

## I. BACKGROUND

Plaintiff Rockstim Consulting, LLC, ("Rockstim") a Texas-based oil and gas engineering, consulting, and staffing company, brings this breach of contract and tort action against Defendants SM Energy Company ("SM Energy"); Workrise Technologies, LLC; Rusco Operating, LLC; SDS Petroleum Consultants, LLC; Precision Petroleum Solutions, LLC; SM Energy employee Nathan Moore; Workrise employee James David Rappattnoi; and SDS employee Geno Hill. Rockstim offers engineering, consulting, and quality control services to clients in the oil and gas industry in Texas. (First Amended Complaint, Dkt. 26, ¶ 14). SM Energy is a Delaware corporation that operates in the Texas oil and gas exploration market. (*Id.* ¶ 15).

On December 23, 2016, Rockstim entered into a Master Work Agreement ("MWA") with SM Energy in which Rockstim agreed to provide "services to SM through Plaintiff's employees and contractors" and to perform oil and gas work for SM Energy in Texas in exchange for monthly

payments. (*Id.* ¶ 14). Under the MWA's Terms of Payment provision, SM Energy was required to pay properly submitted invoices for work performed within thirty days of receipt. (Defs.' App'x, Dkt. 31-1, at 4).

Rockstim and SM Energy worked amicably together for several years. But in August 2023, SM Energy began to conspire with Rockstim's competitors—Defendants Workrise and SDS—to run Rockstim out of business by placing Defendants Rappattoni and Hill in charge of approving Rockstim's invoices and scheduling duties. (First Amended Complaint, Dkt. 26, ¶¶ 16–17). Rockstim alleges that immediately after Rappattoni and Hill were placed in charge of approving invoices, "SM stopped timely paying Plaintiff's invoices, in breach of the Master Work Agreement and SM protocols." (*Id.* ¶ 16). Rockstim also alleges that "vesting authority over scheduling and invoicing with Rockstim's competitors" independently violated the MWA. (*Id.*).

In conducting its business, Rockstim compiled a proprietary electronic workbook ("Proprietary Workbook") that consisted of "hundreds, if not thousands" of calculations that allowed the user to assess the best fracking treatments and chemical combinations to utilize in the oil well. (*Id.* ¶ 35). To protect the Proprietary Workbook's secrecy, Rockstim did not share it with customers and included confidentiality provisions in its employment agreements with personnel. (*Id.*). Rockstim alleges that SM Energy misappropriated the Proprietary Workbook by inducing Rockstim's former employees and contractors to copy the workbook and share it. (*Id.* ¶¶ 28, 35).

Rockstim filed its Complaint on November 14, 2025. (Dkt. 1). Defendants SM Energy and Nathan Moore filed a Motion to Dismiss, but it was later mooted when Rockstim filed an Amended Complaint. (Dkts. 15, 26). SM Energy and Moore filed a second Motion to Dismiss. (Dkt. 31). The Magistrate Judge entered a Report and Recommendation ("R&R") concerning the Motion to Dismiss, in which she recommended the Motion be granted and that Rockstim's claims against both

Defendants be dismissed. (Dkt. 52). Rockstim filed objections to the R&R, to which SM Energy and Moore filed a Response. (Dkts. 56, 60).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure authorize magistrate judges to make findings and recommendations for dispositive motions, such as motions to dismiss. Fed. R. Civ. P. 72(b)(1). For dispositive motions, parties are entitled to *de novo* review of any part of a magistrate judge's report and recommendation that has been properly objected to. Fed. R. Civ. P. 72(b)(3). Even when no objections are made, the district judge has the discretion to "accept, reject, or modify the recommended disposition." *Id.*; *see also Thomas v. Arn*, 474 U.S. 140, 154 (1985).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

Fraud claims have a heightened pleading standard, as they must be plead "with particularity." Fed. R. Civ. P. 9(b). Accordingly, plaintiffs must "state all allegations of fraud with particularity by identifying the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994)). Courts must "apply Rule 9(b) to fraud complaints with 'bite' and 'without apology . . . .'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188–89 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).

## III. DISCUSSION

In the R&R, the Magistrate Judge recommended that the Court: (1) dismiss Rockstim's Defend Trade Secrets Act ("DTSA") claim against Defendant Moore on the grounds that Rockstim failed to allege his involvement; (2) dismiss Rockstim's DTSA claim against SM Energy because of its failure to allege that the trade secrets were used in a product or service in interstate commerce; and (3) decline to exercise supplemental jurisdiction over Rockstim's state-law claims against both Defendants. (Dkt. 52). The Court adopts the R&R with respect to dismissing Rockstim's DTSA claim against Moore and declining to exercise supplemental jurisdiction over Rockstim's remaining state-law claims against him but rejects the R&R on all other grounds.

### A. Defendant Moore

The Court adopts the Magistrate Judge's recommendation to dismiss Rockstim's DTSA claim against Defendant Moore. Rockstim's Complaint is devoid of any non-conclusory allegations with respect to his involvement, which Rockstim concedes in its objections. (Dkt. 56, at 5) ("Plaintiff acknowledges that it did not provide any non-conclusory allegations regarding Nathan Moore's misappropriation of trade secrets.").

The Court also adopts the Magistrate Judge's recommendation to decline to exercise supplemental jurisdiction over Rockstim's state-law claims against Defendant Moore. Even though Rockstim's DTSA claim against SM Energy survives for the reasons explained below, Rockstim's numerous state-law tort claims predominate over this single federal claim. *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 117 (D.D.C. 2021) (finding state-law claims predominated and declining to exercise supplemental jurisdiction because there were "significantly more" state-law claims); *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 124763, at *18 (D. Md. Mar. 17, 2015) (declining to exercise supplemental jurisdiction because "there are seven state law claims as compared to the single federal claim"). Rockstim's failure to provide any factual allegations with respect to Moore also leaves this Court unable to find that the state-law claims against him arise out of the same nucleus of fact as its federal claims against the other Defendants. The Court therefore adopts the Magistrate Judge's recommendation to dismiss Rockstim's claims against Defendant Moore.

**B. SM Energy's Objections**

The Court will depart from the Magistrate Judge's recommendation with respect to dismissing Rockstim's DTSA claim against SM Energy for failing to plead DTSA's interstate commerce element. In finding that Rockstim failed to plead DTSA's interstate commerce element, the Magistrate Judge reasoned that "Rockstim does not allege that its trade secrets relate to a product or service that was used in interstate commerce" because it "alleges that it performed all jobs and services in this case in Texas and used its proprietary information on jobs in Texas." (Dkt. 52, at 6). Defendants object on the grounds that: (1) Rockstim provides its services to market participants outside the state and (2) its trade secrets relate to oil, a product that is in interstate

commerce. (Dkt. 56, at 1–5). The Court will depart from the Magistrate Judge's recommendation on these grounds and sustain Defendants' objections with respect to Rockstim's DTSA claim.[1]

To state a DTSA claim, a plaintiff must plead that the trade secrets at issue "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Interstate commerce consists of "the generation of goods and services for interstate markets and their transport and distribution to the consumer." *United States v. Am. Bldg. Maint. Indus.*, 422 U.S. 271, 276 (1975). Although Congress has the authority to regulate any activity that "affects interstate commerce," DTSA involves a narrower exercise of that authority because it applies only to trade secretes that relate to products or services that are actually "in commerce." *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 597 (E.D. Tex. 2021) ("When a statute specifies that it applies to activity 'in commerce,' the statute applies only to activity actually within the flow of interstate commerce as opposed to activity that merely affects interstate commerce.").

The Court finds that Rockstim has sufficiently alleged that its trade secrets relate to a product or service in interstate commerce. First, courts have found DTSA's interstate commerce element met even with respect to purely intrastate services if those services are provided to out-of-state market participants. *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 715 (W.D. Tex. 2025); *Providence Title*, 547 F. Supp. 3d at 597. In *Providence Title*, for example, the court found that a Texas company that exclusively provided title services for properties in Texas satisfied DTSA's interstate commerce requirement because it provided the services to out-of-state purchasers. 547 F. Supp. 3d at 597; *Associated Pro. Educators of La. v. EDU20/20 LLC*, No. 1:22-CV-05720, 2023 WL 6290081, at *9 (W.D. La. Sept. 11, 2023) (finding DTSA's interstate commerce element met because

[1] Rockstim also objected to the R&R on the basis that the Magistrate Judge recommended dismissal on a ground that was not raised in Defendants' Motion to Dismiss. (Dkt. 56, at 1). Because the Court departs from the Magistrate Judge's recommendation on substantive grounds, it does not reach this objection.

plaintiff "provided consulting services to the Association of American Educators, a national organization"), *R. & R. adopted*, 2023 WL 6284088 (W.D. La. Sept. 26, 2023). And here, Rockstim has alleged that it provided its services to SM Energy, a Delaware corporation that merely does business in Texas. (First Amended Complaint, Dkt. 26, ¶ 4). At this early stage, these allegations are sufficient to infer that Rockstim provides its services to out-of-state market participants.

Second, Rockstim sufficiently alleges that its trade secrets relate to SM Energy's oil and gas and that the oil and gas is a product in interstate commerce. Although DTSA claims typically involve trade secrets that relate to the plaintiff's product or service, courts have also found that plaintiffs can satisfy DTSA's interstate commerce element if their trade secrets relate to one of the defendant's products that is in interstate commerce. *Nextpulse, LLC v. Life Fitness, LLC*, No. 22 CV 03239, 2024 WL 1376213, at *7 (N.D. Ill. Mar. 31, 2024) (finding that to meet DTSA's "interstate commerce element, a plaintiff may allege that the trade secrets are used in the defendant's product"); *Marimar Textiles, Inc. v. Jude Clothing & Accessories Corp.*, No. 17-2900 (JLL), 2017 WL 4391748, at *7 (D.N.J. Oct. 2, 2017) (finding interstate commerce element met because plaintiff alleged that defendant used their trade secrets "to create infringing goods, which were meant to be sold, at the very least, throughout the United States").

In *Blue Star Land Services, LLC v. Coleman*, for example, the court found a plaintiff that provided land and regulatory services to large oil and gas companies satisfied DTSA's interstate commerce element because their trade secrets related to "(1) oil for use in interstate commerce and (2) land and regulatory services provided for national oil and gas companies." No. CIV-17-931-R, 2017 WL 6210901, at *1, 7 (W.D. Okla. Dec. 8, 2017). In other words, DTSA's interstate commerce element was met because the plaintiff's trade secrets—confidential rig and mineral information—related to both the service the plaintiff provided to out-of-state clients as well as the oil and gas that the defendant sold in interstate commerce. *Id.*

The same is true here. Rockstim claims that its services were provided to national oil and gas companies. (First Amended Complaint, Dkt. 26, ¶ 14). It further alleges that the oil and gas produced as part of this work was "exported throughout the United States and the world." (*Id.* ¶ 15). And finally, Rockstim alleges that its trade secrets relate to this production of oil and gas. (*Id.* ¶ 35) (alleging that Rockstim's trade secrets "ensure proper flow of materials used in fracking operations, thereby reducing operating costs"). The Court therefore departs from the Magistrate Judge's recommendation and finds that Rockstim has sufficiently alleged that its trade secrets relate to a product or service in interstate commerce.

### C. Other Grounds for Dismissal

Because the Magistrate Judge found that Rockstim failed to plead the interstate commerce element of its DTSA claim, she did not reach the other grounds for dismissal raised in Defendants' Motion. The Court will proceed by considering these additional grounds. In its Motion, SM Energy challenges each of Rockstim's claims under Rule 12(b)(6) and argues that Rockstim fails to state a claim.

#### *i. DTSA and TUTSA*

Rockstim states claims under DTSA and TUTSA.[2] To state a DTSA claim, the plaintiff must sufficiently allege that: (1) it owns a valid trade secret; (2) that the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) that the defendant misappropriated the trade secret. *Comput. Scis. Corp. v. Tata Consultancy Servs. Ltd.*, 159 F.4th 429, 438 (5th Cir. 2025). For the reasons discussed above, Rockstim has sufficiently alleged DTSA's interstate commerce element. In its Motion, SM Energy contests elements 1 and 3, whether Rockstim sufficiently alleged that it owns a valid trade secret that was misappropriated. The Court finds that

[2] The Court analyzes Rockstim's DTSA and TUTSA claims concurrently because of their similarities. *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 339 (E.D. Tex. 2019).

Rockstim sufficiently alleged that the Excel version of the Proprietary Workbook is a trade secret or compilation of trade secrets that SM Energy misappropriated.

"A trade secret is information which derives independent economic value from being not generally known or readily ascertainable through proper means." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022). To allege the existence of a trade secret, a plaintiff need only describe them "with enough clarity 'for defendants [to] understand how each claimed trade secret differs from information in the public domain.'" *Eagleburgmann Indus. LP v. Bernstein*, No. 4:25-CV-4967, 2026 WL 1506746, at *6 (S.D. Tex. May 29, 2026) (quoting *Topstone Commc'ns, Inc. v. Xu*, 719 F. Supp. 3d 701, 706 (S.D. Tex. 2024)). Compilations of information—even if that information is publicly available— can "benefit from trade secret protection because of the time and expense incurred in creating the compilation and because of their resultant potential value to competitors." *El Paso Disposal*, 766 F. Supp. 3d at 713.

Rockstim sufficiently alleges that the Proprietary Workbook is a trade secret or compilation of trade secrets. The Proprietary Workbook is a collection of data and calculations that allow the user to perform quality control, monitor jobs, and determine the best approach for fracking treatments within an oil well. (First Amended Complaint, Dkt. 26, ¶ 35). Rockstim kept the Excel version of the Workbook secret by refusing to transmit it outside the company and including confidentiality provisions in its personnel agreements that restricted copying and usage. (*Id.*).

SM Energy argues that Rockstim failed to allege that it owned the trade secrets because of its concession that it shared a PDF version of the Proprietary Workbook with SM Energy. (Mot., Dkt. 31, at 13). Rockstim sharing a PDF version of the Workbook to SM Energy during their work together does not necessarily prevent it from being a trade secret. *Lifesize, Inc. v. Chimene*, No. 1:16-CV-1109-RP, 2017 WL 1532609, at *9 (W.D. Tex. Apr. 26, 2017) ("[I]t is not necessary for the defendant's acquisition to be wrongful; the plaintiff may instead show that the defendant permissibly

acquired the information within a relationship of confidence and later disclosed or used the information in violation of that confidence."). Regardless, Rockstim alleges that it labored to keep the *Excel version* of the Proprietary Workbook secret, not the *PDF version* that it shared with SM Energy. (Dkt. 26, ¶¶ 19, 35) ("Mr. Hill . . . asked Wood to provide Excel versions of the Proprietary Workbook for all SM staff on the job. Wood refused to provide anything more than a pdf version, which angered Hill."). There is nothing to indicate that SM Energy owned or had access to the Excel version of the Workbook prior to the alleged misappropriation.

SM Energy additionally argues that Rockstim has failed to differentiate the Excel version of the Proprietary Workbook from the PDF version and that the two are equivalent. (Mot., Dkt. 31, at 13). This Court rejected a similar argument in *Primacy Engineering Inc. v. SAN Engineering*, finding the fact that specifications of the trade secret had been shared did not negate its secrecy at the pleading stage. No. 1:18-CV-129-RP, 2018 WL 3520143, at *2 (W.D. Tex. July 20, 2018) ("Whether or not the specifications sent to bidders were so precise as to deprive the modified data package of trade secret status is not clear from the face of the complaint."). Similarly, whether the Excel and PDF versions of the Proprietary Workbook are so equivalent as to negate the secrecy of the former is a fact dispute that must be resolved at a later stage.

Rockstim has also sufficiently alleged that SM Energy misappropriated the Proprietary Workbook. SM Energy argues that their contract did not impose any restrictions on using Rockstim's proprietary information. (Mot., Dkt. 31, at 13). Rockstim pled that SM Energy knew of Rockstim's post-employment confidentiality contracts with its personnel and the secretive nature of the Proprietary Workbook but misappropriated it anyway. (First Amended Complaint, Dkt. 26, ¶ 48). At this stage, these allegations are sufficient to allege misappropriation. *See Lifesize*, 2017 WL 1532609, at *9.

Finally, SM Energy asserts that Rockstim failed to articulate how the alleged misappropriation resulted in any injury, (Mot., Dkt. 31, at 15), but Rockstim's allegation that SM Energy gained a competitive advantage in markets in which Rockstim operated is sufficient. (First Amended Complaint, Dkt. 26, ¶ 48) ("[Defendants] engag[ed] in unauthorized use of [Rockstim's] trade secrets to provide Defendants with an unfair advantage and to improperly compete with Rockstim."); *VariChem Int'l, Inc. v. Riddle's Delhi & Chem. Serv. Co., Inc.*, No. 4:24-cv-1784, 2025 WL 816740, at *4 (S.D. Tex. Mar. 14, 2025) ("[Plaintiff] has alleged enough to plead injury, as [plaintiff] alleges that [defendant] is a competing business."). Rockstim has therefore sufficiently alleged claims under DTSA and TUTSA against SM Energy.

*ii. Breach of Contract*

Rockstim states a claim for breach of contract. The elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 546 F.3d 386, 418 (5th Cir. 2009); *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Rockstim alleges that SM Energy breached the MWA by failing to timely pay invoices and by vesting authority over scheduling and invoicing with Rockstim's competitors. (First Amended Complaint, Dkt. 26, ¶ 66). Rockstim states a claim on the former basis but not the latter.

Beginning with the allegations involving scheduling and invoice processing authority, Rockstim does not point to anything in the MWA that would have prohibited SM Energy from delegating scheduling and invoices to Rockstim's competitors and therefore fails to allege a breach. Rockstim alleges these acts are a "violation of the conflict-of-interest provisions in the company's ethics code, which the MWA incorporates via reference." (First Amended Complaint, Dkt. 26, ¶ 66). But the conflict-of-interest provision does not impose any specific legal obligation, all it states is that

"conflicts of interest must be avoided." (*Id.* ¶ 18). Even if it did create a legal obligation, it would only impose an obligation on Rockstim—the contractor—given that it states: "*Contractor* shall be familiar with and abide by the provisions of SM Energy's Code of Business Conduct and Conflicts of Interest Policy and any other of SM Energy's policies . . . ." (Defs.' App'x, Dkt. 31-1, at 1, 6). Rockstim does not point to any provision of the MWA that imposes this obligation on SM Energy. Rockstim therefore fails to state a claim for breach of contract on this ground.

Rockstim does, however, state a claim for breach of contract on the basis that SM Energy failed to pay its invoices in a timely manner. Rockstim has alleged the existence of a valid contract (the MWA); performance (its work for SM Energy); that SM Energy breached the contract (failing to pay the invoices within 30 days of receipt); and damages ($250,000 in arrears). SM Energy argues that Rockstim failed to plead damages because Rockstim eventually accepted payments in satisfaction of the amounts owed under the invoices. (Mot., Dkt. 31, at 5). But these allegations are not in Rockstim's Complaint, and the Court is limited to the pleadings at this stage.[3] *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The Court therefore finds that Rockstim has sufficiently alleged damages and stated a claim for breach of contract through its allegations that SM Energy breached the MWA by failing to pay its invoices under the terms of the MWA.

*iv. Fraud*

Rockstim fails to state a claim for fraud. To plead fraud under Texas law, a plaintiff must sufficiently allege that: "(1) the defendant made a false, material representation; (2) the defendant 'knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;' (3) 'the defendant intended to induce the plaintiff to act upon the representation;' and (4) the plaintiff justifiably relied on the representation, which caused the

[3] Because the Court finds Rockstim adequately pled damages by alleging $250,000 in arrears, it does not reach whether Rockstim's other alleged damages (costs from borrowing and defaulting on a loan) are recoverable.

plaintiff injury." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019) (quoting *JP Morgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (2018)). The Federal Rules of Civil Procedure impose a heightened pleading requirement for fraud claims. *See* Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff that brings a fraud claim must also: (1) specify the statements contended to be fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002).

In its Complaint, Rockstim attempts to plead its fraud claim on several grounds. First, it points to SM Energy's "false representation to Plaintiff about its workload projections to 2024 . . . ." (First Amended Complaint, Dkt. 26, ¶ 63). But it fails to plead with the particularity required under Rule 9(b) because it does not provide the content of the statements relevant to the alleged misrepresentation. *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 577 (N.D. Tex. 2013) (dismissing fraud claim because plaintiff failed to provide "the content of the specific statements that were made"); *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) ("This Circuit's precedent interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent . . . .'" (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997))); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188–89 (5th Cir. 2009) ("[P]leading common law fraud with particularity demands the specifics of the false representation—without the precise contents of the misrepresentation the plaintiff cannot show he relied on the misrepresentation to his detriment.").

Rockstim also fails to provide the identity of the speaker.[4] *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (affirming dismissal of fraud claim because plaintiff did "not allege

[4] In its Response, Rockstim argues that it could learn the identity of the SM employee if given the opportunity to conduct discovery. (Dkt. 34, at 10). But Rule 9(b) is a "gatekeeper to discovery" and plaintiffs must satisfy

who at the company made the statements" contended to be fraudulent); *Tex. One Source Indus. Sols. LLC v. Euler Hermes N. Am. Ins. Co.*, No. 5:25-CV-00832-JKP, 2026 WL 2414671, at *6 (W.D. Tex. Aug. 18, 2026) ("Without pleading the specific representative speaking on its behalf, the Court finds the general allegation that [the corporate defendant] made misrepresentations insufficient for purposes of Rule 9(b)."). Rockstim therefore fails to state a claim for fraud on this basis with the particularity required under Rule 9(b).

Rockstim also attempts to base its fraud claim on statements from SM Energy's ethics code. Rockstim points to the following statements as fraudulent:

1. The existence or appearance of conflicts of interest must be avoided
2. All persons subject to the Code of Conduct, including our Business Partners, are expected to deal fairly and honestly with SM Energy, our other Business Partners, and third parties
3. Prohibited actions include taking unfair advantage of any third party through manipulation, concealment, abuse of privileged information, misrepresentation, or misappropriation of confidential information

(First Amended Complaint, Dkt. 26, ¶ 18). Rockstim alleges that it continued to do business with SM Energy out of reliance on these fraudulent representations, but that SM Energy did not have any intention of following them. (*Id.* ¶¶ 18, 63). Rockstim does not state a claim for fraud on this basis because the statements in SM Energy's ethics code are not material and cannot be reasonably relied upon. Furthermore, these statements are not actionable for the purposes of fraud because they involve future expectations of conduct and there is no indication that SM Energy knew they were false when made.

---

its requirements—which include identifying who made the fraudulent statements—for the doors of discovery to open. *Grubbs*, 565 F.3d at 185.

For a statement to be actionable as fraud, it must be material. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010). "A false representation is material if a reasonable person would attach importance to and be induced to act on the information." *Id.* It is presumed that a reasonable person would not be induced to act on vague, ambiguous, or generalized statements. *Id.*; *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) ("[S]tatements that are so inherently vague and ambiguous cannot be material.").

Similarly,[5] it must have been reasonable to rely on the defendant's representation for it to be actionable as fraud. *Maya Walnut LLC v. Ly*, 738 S.W.3d 764, 775 (Tex. 2026). Although reasonable reliance usually poses a question of fact, the element can be negated as a matter of law if circumstances exist under which reliance cannot be justified. *Id.* Reliance can be justified only if the representation "is sufficiently specific and definite" such that "it is reasonable to rely on it as a commitment to the future." *Ly v. Maya Walnut LLC*, 719 S.W.3d 347, 358 (Tex. App.—Dallas 2024, aff'd). Statements of hope as well as expressions of expectations have been found to be too indefinite to be reasonably relied upon as a matter of law. *Id.*; *Simulis, L.L.C. v. Gen. Elec. Cap. Corp.*, 439 S.W.3d 571, 577 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Anubis Pictures, LLC v. Selig*, No. 05-19-00817-CV, 2021 WL 805214, at *14 (Tex. App.—Dallas Mar. 3, 2021, no pet.).

The statements Rockstim points to from SM Energy's ethics code are too vague to be material and too indefinite to be reasonably relied upon. The statement that "[t]he existence or appearance of conflicts of interest must be avoided," for example, is an ambiguous expression of future expectations and inherently unverifiable. *Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 292 n.5 (5th Cir. 2023) (finding representation that defendant "would treat [plaintiff] as a family

---

[5] There is substantial conceptual overlap between materiality and reliance. *Maya Walnut LLC v. Ly*, 738 S.W.3d 764, 775 (Tex. 2026) (Blacklock, J., concurring); Joseph M. Stool, *The Element of Materiality in Deceit Cases*, 29 TEX. L. REV. 644, 650 (1951) ("It is sometimes difficult to separate the requirement of justifiable reliance from that of materiality.").

member" too vague to support a fraud claim). Even assuming a conflict of interest did occur as Rockstim alleges, it would not necessarily make this statement false or fraudulent.

For similar reasons, courts have repeatedly recognized that codes of corporate conduct and ethics are too vague and aspirational to be cognizable for the purposes of securities fraud. *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 683 (N.D. Tex. 2022) (finding that "[c]ompanies' codes of ethics are inherently aspirational" and not "specific or objective factual representations" upon which a fraud claim must be based); *In re Plains All Am. Pipeline, L.P. Sec. Lit.*, 307 F. Supp 3d 583, 625 (S.D. Tex. 2018) ("[A] code of conduct 'expresses opinions as to what actions are preferable, as opposed to implying that all staff, directors, and officers always adhere to its aspirations.'" (quoting *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017))). The Court does not see any reason why the result should be different here.

Additionally, these statements cannot support a claim for fraud because they contemplate future conduct and there is no indication that SM Energy knew they were false. For a promise of future conduct to be actionable as fraud, there must be some indication that defendant had "no intention of performing at the time when it was made." *Wesdem*, 70 F.4th at 292 (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)). Rockstim's allegation that SM Energy "knew these representations/nondisclosures were false" is conclusory and therefore insufficient to allege that SM Energy knew its representations were false when made. (First Amended Complaint, Dkt. 26, ¶ 63); *Wesdem*, 70 F.4th at 292 (finding the plaintiff failed to state a claim for fraud where they had alleged that the defendant's "promise was false and that [the defendant] knew it was false"). SM Energy's alleged nonperformance is likewise inadequate to make out a claim without additional supporting facts suggesting an intention not to perform. 70 F.4th at 293. For these reasons, Rockstim fails to state a claim for fraud to the extent it is premised on the statements made in SM Energy's ethics code.

*v. Fraud by Nondisclosure*

Rockstim also fails to state a claim for fraud by nondisclosure. Fraud by nondisclosure is a subcategory of common-law fraud. *Matter of Clem*, 124 F.4th 341, 349 (5th Cir. 2024). To state a claim for fraud by nondisclosure under Texas law, a plaintiff must allege that the defendant: (1) deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts or did not have the opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff suffered as a result of acting on the defendant's nondisclosure. *Id.* (citing *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019)). The plaintiff must also plead their claim with sufficient particularity under Rule 9(b). *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006).

Rockstim alleges that SM Energy was required to disclose that Rockstim's competitors had been put in charge of processing its invoices. (First Amended Complaint, Dkt. 26, ¶ 63). Rockstim alleges that this nondisclosure induced it to refrain from acting while Defendants "systematically delayed payment." (*Id.*). Rockstim fails to state a claim for fraud by nondisclosure because it does not sufficiently allege that SM Energy had a duty to disclose or meet Rule 9(b)'s particularity requirements.

Rockstim fails to allege that SM Energy had a duty to disclose its delegation of processing the invoices to Rockstim's competitors. "Whether such a duty exists is a question of law." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). A duty to disclose can arise "under several limited categories," such as where "the parties share a confidential or fiduciary relationship" or "where one party voluntarily discloses some but less than all material facts, so that he must disclose the whole truth 'lest his partial disclosure convey a false impression.'" *Clem*, 124 F.4th at 353 (quoting *Lewis v. Bank of Am., N.A.*, 347 F.3d 587, 588 (5th Cir. 2003)).

The only allegation Rockstim offers with respect to SM Energy having a duty to disclose is that "Defendants had an obligation to disclose the true identity of the Contract Superintendents under the MWA, ethics policy, and in order to not interfere with Plaintiff's contracts . . . ." (First Amended Complaint, Dkt. 26, ¶ 63). Rockstim does not allege the existence of a confidential or fiduciary relationship between itself and SM Energy.[6] Nor does it provide any further detail on why the MWA, ethics policy, or its contracts with third parties imposed a duty on SM Energy to disclose that it had delegated the processing of Rockstim's invoices to its competitors.

Given that "[w]hether a duty to disclose exists poses a question of law[,]" *Clem*, 124 F.4th at 353, Rockstim's allegation that a duty existed is a legal conclusion that this Court need not take as true. *See Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). And this legal conclusion standing alone is insufficient to allege that SM Energy had a duty to disclose that it had delegated processing Rockstim's invoices to Rockstim's competitors. *See First v. Rolling Plains Implement Co.*, 108 F.4th 262, 272 (5th Cir. 2024) (finding that the plaintiff failed to state a claim for fraud because "[v]ague references to a 'duty to disclose,' offered without a showing of the contours or basis of this duty, are insufficient to demonstrate the 'peculiar circumstances' requiring a party to disclose particular facts"); *Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 537 (W.D. Tex. 2021).

Rockstim also fails to plead its fraud by nondisclosure claim with the particularity required under Rule 9(b). For claims involving the "omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the misrepresentations misleading." *Caroll*, 470 F.3d at 1174 (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004)). Rockstim alleges "no facts showing when, if ever, it was incumbent upon" SM Energy to disclose

---

[6] The fact that Rockstim and SM Energy contracted with each other through the MWA does not itself demonstrate a confidential or fiduciary relationship. *Smith v. BCE Inc.*, 225 F. App'x 212, 219 (5th Cir. 2007); *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1004 (5th Cir. 1997).

any information to them related to who was processing their invoices, nor how it should have done so. *Id.* Rockstim also fails to particularize who had the duty to disclose, given that its only allegation with respect to duty is the group-wide allegation that "Defendants had an obligation to disclose . . . ." (First Amended Complaint, Dkt. 26, ¶ 63). Rockstim therefore fails to plead with the particularity Rule 9(b) requires and does not state a claim for fraud by nondisclosure.

*vi. Negligent Misrepresentation*

Rockstim also fails to state a claim for negligent misrepresentation. The elements of negligent misrepresentation under Texas law are: (1) a representation made by the defendant in the course of its business or in a transaction in which it has a pecuniary interest that (2) conveyed "false information" for the guidance of others in their business, (3) was made without reasonable care or competence in obtaining or communicating the information, (4) was relied upon by the plaintiff, and (5) caused pecuniary loss. *Boeing Co. v. Sw. Airlines Pilot Ass'n*, 716 S.W.3d 140, 150 n.19 (Tex. 2025). Rockstim must also plead its negligent misrepresentation claim with the particularity required under Rule 9(b) because it is based on the same facts as its fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (finding Rule 9(b)'s heightened pleading requirements applied because the plaintiff's "fraud and negligent misrepresentation claims are based on the same set of alleged facts"); (Resp., Dkt. 34, at 11) ("The same factual allegations that support Rockstim's claim for fraud likewise support a claim for negligent misrepresentation . . . .").

Rockstim's negligent misrepresentation claim fails for similar reasons as its claim for fraud. To the extent Rockstim premises its claim on SM Energy's representations regarding the 2024 workload projections, Rockstim fails to meet the particularity requirements of Rule 9(b) because it does not provide the content of the statements at issue or the identity of the speaker. *Flaherty*, 565 F.3d at 207; *Sullivan*, 600 F.3d at 551.

Rockstim's claim likewise fails to the extent it is based on the statements in SM Energy's ethics code because the statements involve expectations of future action and not representations of existing facts. Negligent misrepresentation claims must be premised on representations of fact. *Peykoff v. Cawley*, No. 24-10186, 2025 WL 1380070, at *7 (5th Cir. May 13, 2025) ("Texas law requires that the misrepresentation at issue be 'one of existing fact.'" (quoting *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied))). A promise of future action is not a representation of fact and thus cannot support a negligent misrepresentation claim under Texas law. *Id.*; *Perrotta v. Bank of Am. Nat'l Ass'n*, No. 24-50948, 2025 WL 3471017, at *4 (5th Cir. Dec. 2, 2025).

*Pi Data Centers PVT. Ltd. v. Hewlett Packard Enterprises Company* is instructive here. No. H-22-3947, 2024 WL 1056039, at *1, 4 (S.D. Tex. Mar. 11, 2024). The district court in that case dismissed a similar negligent misrepresentation claim under Rule 12(b)(6), reasoning that the plaintiff could not base its claim on Hewlett Packard's Partner Code of Conduct and Anti-Corruption Policy because the statements within it—as well as any statements related to adherence to the code and policy—were "inactionable statements about future conduct." *Id.* The Fifth Circuit affirmed. *Pi Data Ctrs. Pvt. Ltd. v. Hewlett Packard Enters. Co.*, No. 24-20157, 2025 WL 785202, at *1 (5th Cir. Mar. 12, 2025).

Like the code of conduct and policy in that case, the statements contained within SM Energy's ethics policy involve expectations of future conduct, not representations of fact. (First Amended Complaint, Dkt. 26, ¶ 18) ("All persons subject to the Code of Conduct . . . are *expected* to deal fairly and honestly . . . ." (emphasis added)); (*id.*) ("The Code of Conduct provides examples of conflicts of interest that *may develop during our business relationship* . . . ." (emphasis added)). Thus, SM Energy's ethics code is not actionable for the purposes of negligent misrepresentation and Rockstim fails to state a claim.

*vii. Tortious Interference with Contract*

Rockstim states a claim for tortious interference with contract. To state a claim for tortious interference with contract under Texas common law, a plaintiff must sufficiently allege that: (1) a contract existed; (2) the defendant willfully and intentionally interfered with this contract; (3) this interference proximately caused the plaintiff's injury; and (4) plaintiff suffered actual damages or loss. *Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*, 114 F.4th 382, 398 (5th Cir. 2024) (citing *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017)). "Critically, the interference must entail a breach of the contract in question." *El Paso Disposal*, 766 F. Supp. 3d at 722; *Adidas Am. Inc. v. Shoebacca Ltd.*, No. 3:20-cv-3248-N, 2021 WL 4399745, at *2 (N.D. Tex. Sept. 27, 2021).

Rockstim alleges that SM Energy tortiously interfered with the employment contracts it had with its personnel. Rockstim alleges that SM Energy's interference resulted in breaches of: (1) a no-solicitation clause that prohibited its personnel from soliciting any of Rockstim's customers to offer competitive services; (2) a contractual 20-day notice and waiting period before its contractors could terminate their contracts; and (3) confidentiality provisions that prohibited personnel from copying or distributing the Proprietary Workbook. (First Amended Complaint, Dkt. 26, ¶¶ 26–28).

Beginning with the no-solicitation clause and contractual 20-day notice and waiting period, SM Energy argues that Rockstim fails to state a claim because there are no facts indicating Rockstim's employees breached these provisions of their employment contracts. (Mot., Dkt. 31, at 16). In its Response, Rockstim contends that its allegations are sufficient because it specified the contractual provisions at issue and alleged that its employees breached them. (Dkt. 34, at 16–17).

Although Rockstim's factual allegations surrounding the breaches are sparse, "[i]t appears that fairly generic allegations as to the nature of the breach can satisfy the pleading requirements under Rule 8(a)." *AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 399–400 (W.D. Tex. 2023). In *Innova*

*Hospital v. Blue Cross & Blue Shield of Georgia*, for example, the Fifth Circuit found the plaintiff's allegation that the defendant "breached the provision of the agreement obligating it to pay the plaintiff's claims for covered products and services" sufficient to allege a breach. 892 F.3d 719, 732 (5th Cir. 2018). And thus, Rockstim's allegation that its employees breached the no-solicitation and 20-day notice and waiting provisions of their employment agreements is likewise sufficient at this stage. (First Amended Complaint, Dkt. 26, ¶ 27); *see Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 739 (5th Cir. 2015).

SM Energy also argues Rockstim fails to allege "willful and intentional interference" because the email SM Energy sent to Rockstim's employees cannot—without more—be considered a willful act intended to induce the employees to breach their employment contracts. (Mot., Dkt. 31, at 17). Once again, the bar at the pleading stage is low; "it is enough that the evidence bend the rod; [the plaintiff] need not yet land the fish." *Tucker v. Sul Ross State Univ.*, No. PE:25-CV-49-DC-DF, 2026 WL 2053103, at *6 (W.D. Tex. June 30, 2026). And here, Rockstim's allegations that SM Energy interfered with its personnel contracts by emailing Rockstim's employees that they would need to quickly switch firms to one of Rockstim's competitors if they would like to continue working with SM Energy and that SM Energy knew of the restrictive covenants in the employee's contracts are sufficient to bring this element beyond pure speculation. (First Amended Complaint, Dkt. 26, ¶ 51); *U.S. Enercorp, Ltd. v. SDC Mont. Bakken Expl., LLC*, 966 F. Supp. 2d 690, 706 (W.D. Tex. 2013) (finding allegation that defendant knowingly induced third party to make assignments in violation of consulting contract sufficient to allege willful and intentional interference); *Diamond Offshore Co. v. Survival Sys. Int'l, Inc.*, 902 F. Supp. 2d 912, 922, 930 (S.D. Tex. 2012).

Finally, SM Energy argues that Rockstim's claim is preempted by TUTSA to the extent it is premised on its employees having breached their employment contracts by misappropriating trade secrets. "TUTSA 'displaces conflicting tort, restitutionary, and other law of this state providing civil

remedies for misappropriation of a trade secret,'" but does not preempt "civil remedies that are not based upon misappropriation of a trade secret.'" *Trinseo Eur. GmbH v. Kellogg Brown & Root, L.L.C.*, 165 F.4th 399, 420–21 (5th Cir. 2026) (quoting Tex. Civ. Prac. & Rem. Code. § 134A.007). Although the exact scope of preemption under TUTSA is unclear, its general purpose "is to 'prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret.'" *ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp. 3d 680, 684 (W.D. Tex. 2019) (quoting *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 1:17-CV-444-RP, 2018 WL 315753, at *2 (W.D. Tex. Jan. 5, 2018)).

Rockstim concedes that this theory of its claim would be preempted if the Proprietary Workbook is found to be a trade secret but argues that preemption is premature given that Defendants still contest the Workbook's status as a trade secret. (Resp., Dkt. 34, at 18). Consistent with Rockstim's argument, it appears that "a growing number of decisions" have allowed claims that are potentially preempted by TUTSA to proceed in the alternative to a TUTSA claim if whether the contested material constitutes a trade secret remains disputed. *Riot v. Apex Trader Funding Inc.*, No. 1:24-CV-1557-ADA, 2025 WL 1502562, at *1 (W.D. Tex. May 13, 2025).

But the Fifth Circuit recently cast doubt on the availability of this approach in *Trinseo*. 165 F.4th at 420–22. There, the Fifth Circuit found that TUTSA preempted a claim for misappropriation of confidential information that the plaintiff had brought in the alternative to their TUTSA trade secrets claim. *Id.* The Court rejected the plaintiff's argument that "TUTSA does not preempt claims asserted in the alternative to trade secret claims" and affirmed the lower court's dismissal even though it had been done at summary judgment and before the TUTSA claim was adjudicated. *Id.* The Fifth Circuit made clear that "TUTSA 'preempts claims that rely on the same facts as a trade-secret-misappropriation claim[,]'" regardless of how the plaintiff labels them or whether they

proceed in the alternative to the TUTSA claim. *Id.* at 422 (quoting *Coe v. DNOW LP*, 718 S.W.3d 338, 353 (Tex. App.—Houston [14th Dist.] 2025, pet. denied)).

The Court therefore finds that it cannot allow this portion of Rockstim's tortious interference claim to proceed, given that Rockstim does not contest that it is premised on the same facts as its TUTSA claim. (Resp., Dkt. 34, at 18). This result is consistent with TUTSA's purpose of "eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *ScaleFactor*, 394 F. Supp. 3d at 684 (quoting *Embarcadero*, 2018 WL 315753, at *2). Thus, Rockstim's claim for tortious interference with contract is dismissed as preempted to the extent it is premised on its personnel breaching the confidentiality provisions of their employment contracts but can proceed otherwise.

*viii. Tortious Interference with Prospective Business Relations*

Rockstim fails to state a claim for tortious interference with prospective business relations. To state a claim for tortious interference with prospective business relations, a plaintiff must sufficiently allege that: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damage or loss as a result. *Boeing*, 716 S.W.3d at 150 n.20.

Rockstim fails to allege that there was a reasonable probability that it would have entered into a business relationship with a third party. Reasonable probability "is 'sufficiently alleged when the plaintiff can describe the specifics of the proposed agreement that never came into fruition.'" *Ass'n Am. Physicians & Surgeons Educ. Found. v. Am. Bd. Internal Med.*, 793 F. Supp. 882, 891 (S.D. Tex. 2025) (quoting *Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *4

(S.D. Tex. Oct. 22, 2020)). Rockstim's only factual allegation regarding this element is that it "lost out of [sic] prospective business relationships with several potential customers, including Manti Tarka, Troubadour, and Admiral Petroleum." (First Amended Complaint, Dkt. 26, ¶ 61). Merely listing these entities as potential customers that were lost without providing the specifics of any proposed agreements with them is insufficient to state a claim. *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 403 (5th Cir. 2008); *Pureshield, Inc. v. Allied Bioscience, Inc.*, No. 4:20-CV-734-SDJ, 2021 WL 4492861, at *3 (E.D. Tex. Sept. 30, 2021) ("Courts have consistently required plaintiffs to do more than vaguely identify potential business partners purportedly influenced by a defendant's alleged misconduct."). Rockstim therefore fails to state a claim for tortious interference with prospective business relations.

*ix. Conspiracy/Vicarious Liability*

Rockstim also fails to state a civil conspiracy claim. As an initial matter, it is unclear whether Rockstim intends to bring this claim against SM Energy. In its Complaint, Rockstim indicates that its conspiracy claim is brought in the alternative to its antitrust conspiracy claim. (Dkt. 26, ¶ 69) ("In the event Defendants are not liable for an antitrust conspiracy, they are liable, in the alternative, for a civil conspiracy."). And Rockstim brought its antitrust conspiracy claim against Defendants SDS, Hill, Workrise, and Rappattoni—not SM Energy. (*Id.* ¶ 40). But in its Response, Rockstim does not address this issue directly and argues as though its conspiracy claim includes SM Energy. (Dkt. 34, at 20–21). In any event, Rockstim fails to state a claim for civil conspiracy against SM Energy.

Under Texas law, "civil conspiracy is a theory of vicarious liability and not an independent tort." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). It therefore "requires an underlying tort that caused damages," meaning that the conspiracy must be premised on one of Rockstim's surviving tort claims. *Id.* Rockstim premises its civil conspiracy claim on each of its other tort claims. (First Amended Complaint, Dkt. 26, ¶ 69). To state a claim for civil

conspiracy, a plaintiff must sufficiently allege: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 800 F. App'x 239, 248 (5th Cir. 2020) (citing *Agar*, 580 S.W.3d at 141–42).

Rockstim fails to allege a meeting of the minds between SM Energy and the other Defendants. All Rockstim provides on this element is that "Defendants established an agreement to destroy Plaintiff's company through torts described above . . . and Plaintiff suffered damages as a result." (First Amended Complaint, Dkt. 26, ¶ 69). Courts have found similar allegations to be insufficient to state a claim. *Ochoa v. Bradfute Enters., LLC*, No. EP-24-CV-228-KC, 2025 WL 841752, at *14 (W.D. Tex. Mar. 11, 2025) (finding "bare allegation" that "Defendants 'agreed to' discriminate and retaliate against" plaintiff insufficient to state a claim); *Unified Buddhist Church of Vietnam v. Unified Buddhist Church of Vietnam*, No. H-17-1433, 2019 WL 13252638, at *2 (S.D. Tex. Jan. 17, 2019). In *Angel v. La Joya Independent School District*, for example, the Fifth Circuit found allegations that the defendants "reached an agreement to retaliate against the Plaintiffs for exercising their rights of political affiliation" inadequate to state a claim for conspiracy to retaliate. 717 F. App'x 372, 380 (5th Cir. 2017). Similarly, Rockstim's allegations that SM Energy reached an agreement to commit all the other torts Rockstim alleges is insufficient to state a claim for civil conspiracy.

**D. Leave to Amend**

In its Response and objections, Rockstim requests leave to amend if any of its claims are dismissed. (Dkts. 34 at 17 n.5; 56 at 5). Rockstim has already amended its Complaint once and now "may amend . . . only with the opposing party's consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts consider the factors of "the futility of amending" and "the party's repeated failure to cure

deficiencies by previous amendments, undue delay, or bad faith" in considering whether to grant leave to amend. *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 392 (5th Cir. 2008).

The Court will deny Rockstim's request for leave at this time because it does not provide a proposed amended complaint nor specific facts it would plead to cure the defects in its claims. *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017); Loc. R. CV-7(b). Nevertheless, the Court finds that giving Rockstim an additional opportunity to make its case for being granted leave to amend is appropriate considering Rule 15 and its bias in favor of permitting leave. *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002); *Miller v. Bridgestone Ams. Tire Operations, LLC*, No. 1:21-CV-437-RP, 2023 WL 2138182, at *4 (W.D. Tex. Feb. 21, 2023), *R. & R. adopted*, 2023 WL 2921339 (W.D. Tex. Apr. 12, 2023). Accordingly, the Court denies Rockstim's request for leave to amend without prejudice.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the United States Magistrate Judge's R&R, (Dkt. 52), is **ADOPTED IN PART AND REJECTED IN PART**, such that:

1. Defendants SM Energy and Moore's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**, as follows:
    a. The Motion is **GRANTED** as to Rockstim's claims against Defendant Moore and these claims are **DISMISSED** without prejudice.
    b. The Motion is **GRANTED** as to Rockstim's fraud, negligent misrepresentation, tortious interference with prospective business relations, and civil conspiracy claims against SM Energy and these claims are **DISMISSED** without prejudice.
    c. The Motion is **GRANTED** as to Rockstim's tortious interference with contract claim against SM Energy to the extent it is premised on the confidentiality provisions of Rockstim's employment contracts and **DENIED** otherwise.

d. The Motion is **GRANTED** as to Rockstim's breach of contract claim against SM Energy to the extent it is premised on SM Energy delegating invoice processing authority to Rockstim's competitors and **DENIED** otherwise.

e. The Motion is **DENIED** as to Rockstim's DTSA and TUTSA claims against SM Energy.

2. Rockstim's request for leave to amend its complaint is **DENIED** without prejudice. Rockstim shall file a motion for leave to amend, if any, within **14 days** of this order.

**SIGNED** on September 18, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE